# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RAMONE A. KENAN,**

        **Petitioner,**

**v.**                                                                  **Case No. 2:05-cv-76**
                                                                                   **(Judge Maxwell)**

**JOYCE FRANCIS, Warden,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On October 15, 2005, Ramone Kenan, a *pro se* federal prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he seeks injunctive relief against the Bureau of Prisons ["BOP"]. Specifically, petitioner seeks an ordering from this Court compelling the BOP to immediately place him in a Community Corrections Center ["CCC"], also known as a halfway house. Additionally, petitioner requests a $1000 release gratuity so he may pay the fees and purchase the equipment necessary to establish himself as a personal fitness trainer and barber upon his release. The government opposes the petition and seeks dismissal of the same.

## I. Factual Background

Prior to December 2002, the BOP had a policy of placing prisoners in halfway houses for up to the last six months of their sentences, notwithstanding the length of their sentences. See P.S. 7310.04. However, the BOP's policy changed as a result of an opinion from the United States Department of Justice's Office of Legal Counsel ["OLC"].

On December 13, 2002, the OLC issued a memorandum opinion regarding the "Bureau of Prisons practice of placing in community confinement offenders who have received sentences

of imprisonment." The memorandum provided that the BOP's long-standing practice of following judicial recommendations and designating certain offenders directly to community corrections centers was unlawful. While the OLC opinion noted that § 3621(b) provides the BOP with the authority to choose a prisoner's place of imprisonment, the OLC determined, based on cases regarding U.S.S.G. § 5C1.1, that confinement in a CCC is not imprisonment. Thus, the OLC determined that § 3621(b) does not provide the BOP with authority to place a prisoner in a CCC. The OLC memorandum also provided in relevant part:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in the section. The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period 'not to exceed six months, of the last 10 per centum of the time to be served,' 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation.

OLC Memorandum, p. 7, n. 6.

As a result of the December 13, 2002, OLC memorandum, the BOP's current policy is that inmates may only be sent to a halfway house during the last ten percent of their sentence, not to exceed six months. Not unexpectedly, this change in policy has resulted in numerous suits by federal prisoners. Following the multitude of challenges, and findings by several circuit and district courts that the new policy was invalid, the BOP revised it policy and published its new CCC policy as a proposed rule for notice and comment. The new policy was finalized into a regulation on February 14, 2005. See 28 C.F.R. § 570.

## II. The Pertinent Statutes

The BOP's new CCC policy is based on the OLC's interpretation of two statutes -- 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Section 3621(b) states:

> The Bureau may designate any available penal or correctional facility that meets

2

minimum standards of health and habitability established by the Bureau, whether
maintained by the Federal Government or otherwise and whether within or
without the judicial district in which the person was convicted, that the Bureau
determines to be appropriate and suitable, considering-
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner'
(4) any statement by the court that imposed the sentence - (A) concerning the
purposes for which the sentence to imprisonment was determined to be warranted;
or (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant
to section 994(a)(2) of title 28. In designating the place of imprisonment or
making transfers under this subsection, there shall be no favoritism given to
prisoners of high social or economic status. The Bureau may at any time, having
regard for the same matters, direct the transfer of a prisoner from one penal or
correctional facility to another.

Section 3624(c) provides:

The Bureau of Prisons shall, to the extent practicable, ensure that a prisoner
serving a term of imprisonment spends a reasonable part, not to exceed six
months, of the last ten per centum of the term to be served under conditions that
will afford a prisoner a reasonable opportunity to adjust to and prepare for the
prisoner's re-entry into the community.

## III. Discussion

### A. Community Corrections Issue

Initially, I note that to the extent the petitioner challenges the BOP's initial policy change in 2002, that challenge has been mooted by the adoption of the February 14, 2005 policy. Petitioner was not considered for placement in a CCC until March 11, 2005. Therefore his CCC placement has always been determined under the February 14, 2005 policy and that policy governs this case. Although in his petition, the petitioner states generally that the new policy never went through the proper procedures under the Administrative Procedures Act ["APA"], the undersigned believes petitioner is referring to the initial 2002 policy change. The February 14, 2005 policy was clearly adopted after appropriate notice and comment. See 5 U.S.C. §§ 551-

559; see also Community Confinement, 69 Fed.Reg. 51213 (proposed Aug. 18, 2004); Community Confinement, 70 Fed.Reg. 1659 (Jan. 10, 2005) (effective Feb. 14, 2005) (codified at 28 C.F.R. § 570).

Turning to the specific claims in the petition, the petitioner's argument is twofold. First, petitioner argues that the BOP's interpretation of § 3624(c) as limiting the amount of time a prisoner can spend in a CCC to six months of the last 10% of the prisoner's sentence is erroneous. Second, he argues that if the Court finds that the BOP's interpretation is not erroneous, then he is entitled to the full six months placement instead of the two months recommended by his Unit Team.

As previously noted, after several courts found that the BOP's initial policy change in 2002 was invalid, the BOP adopted the February 14, 2005 policy. In doing so, the Bureau of Prisons noted:

> [b]ecause various courts have held that the Bureau has discretion under 18 U.S.C. § 3621(b) to place offenders sentenced to a term of imprisonment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion. Accordingly, the Bureau has considered how to exercise that discretion in a manner consistent with the text of Section 3621(b), Congressional objectives reflected in related statutory provisions, and the policy determinations of the U.S. Sentencing Guidelines. Based on those considerations, the Bureau has determined to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months. This categorical exercise of discretion is permissible based on the Supreme Court's recognition that, even when a statutory scheme requires individualized determinations, the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability (unless Congress clearly expresses an intent to withhold that authority). See Lopez v. Davis, 531 U.S. 230, 243-44, 121 S.Ct. 714, 148 L.Ed.2d 625 (2001); American Hospital Association v. NLRB, 499 U.S. 606, 612-13, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991). The Bureau will continue to make a case-by-case determination of the particular prison facility (i.e., non-community-confinement facility) for which it will designate each individual inmate.

4

69 Fed.Reg. at 51213.

Unlike the 2002 policy, this new policy assumes that the BOP has the authority under § 3621(b) to transfer an inmate to a CCC prior to their 10% date. However, the BOP declines to exercise that authority by categorically denying CCC placement to all prisoners prior to completion of 90% of their sentence.

Here, petitioner seems to believe that he is eligible for pre-release CCC placement at his 10% date. Therefore, it appears as if petitioner is challenging the new regulation to the extent that the BOP has determined that it does not have the authority to place an inmate in a CCC for longer than six months of the last 10% of the prisoner's sentence. However, as previously mentioned, the BOP has now seemingly conceded through its February 14, 2005 policy, that it has the authority under § 3621(b) to consider CCC placement at any time, but that it is categorically denying CCC placement to all prisoners prior to completion of 90% of their sentence as set forth in § 3624(c). Thus, petitioners' argument becomes whether or not the BOP has the ability to make such a categorical denial.

In Lopez v. Davis, 531 U.S. 230 (2001), the United States Supreme Court found that the BOP could create a categorical rule which excludes certain inmates from a discretionary early release program. In doing so, the Court said that the BOP has the authority to "rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Lopez at 243-244 (citing American Hospital Assn. v. NLRB, 499 U.S. 606, 612 (1991)). This case is indistinguishable from Lopez. Section 3621(b) gives the BOP the general authority to transfer an inmate to a CCC. However, the BOP is only specifically required to give such consideration to inmates when they reach the point set forth in

§ 3624(c). Thus, the BOP has excluded a certain group of inmates, those who have not served 90% of their sentence, from CCC consideration even though they qualify for general consideration under § 3621(b). The Court can find no directive from Congress which would clearly prohibit the BOP from so deciding.

Accordingly, the undersigned is of the opinion that the BOP properly exercised its authority to deny placement in a CCC to those inmates who have not served 90% of their sentence.[1] Therefore, the Court will now turn to petitioners' second argument.

According to the respondent, petitioners' 10% date is 18.1 months. Therefore, at best, petitioner is *eligible* for six months of CCC placement under § 3624(c). However, there is nothing in either § 3621(b) or § 3624(c) which *requires* the BOP to place petitioner in a CCC for six months. To the contrary, § 3624(c) specifically states that the BOP is only required to consider petitioner for CCC placement for a "reasonable part" of the last six months of his sentence. The BOP has done so in this case and has determined that two months is a reasonable length of time based on petitioners' individual community readjustment needs, his institutional adjustment, his discipline history, and his lack of cooperation in completing the appropriate CCC medical testing.[2]

As explained recently by Senior District Judge Irenas in the District of New Jersey:

---

[1] Several other district courts have considered this issue with varying results. See Branch v. United States, 2006 WL 897677 *1, n 2 (E.D.Ark. April 5, 2006) (listing cases); see also Turtle v. Francis, 2005 WL 3504410 *4 (S.D.Tex. Dec. 21, 2005) (same).

[2] Prior to CCC placement, an inmate is required to undergo certain medical testing. Petitioner failed to submit to a purified protein derivative ["PPD"] test for tuberculosis on several occasions. Thus, his CCC placement was initially denied for the failure to submit to the required testing. After petitioner finally submitted to the PPD testing, his Unit Team recommended only a 60 to 90 day CCC placement based, in part, on petitioner's lack of cooperation and failure to follow the rules and regulations.

> [t]he purpose of a CCC placement is to help the inmate with the transition from prison life. Clearly, certain prisoners need more assistance with the transition than others. Those prisoners who are serving longer sentences, who are uneducated or lack marketable job skills, who suffer from mental or physical ailments, or who lack any type of resources or support network outside prison likely need special support to ease their re-entry into society. In contrast, inmates like the Petitioner who are serving shorter sentences, for basically white collar offenses, who have assets, family support, education, and vocational skills are less likely to need as much assistance in their transition [] from prison to society.

Bilinsky v. Federal Bureau of Prisons, 2005 WL 1475558 *3 (D.N.J. June 22, 2005).

In this instance, although petitioner has been in prison for a number of years, by his own admission, he is well-educated and has a strong support network of family and friends outside of prison. Moreover, petitioner asserts no mental of physical ailments that would require an additional adjustment period. It would appear, that petitioner simply wishes to spend more time in a CCC for the simple fact that such pre-release programs subject prisoners to "relatively lenient security and disciplinary policies while providing prisoners considerable personal freedom." See United States v. Tapia, 981 F.3d 1194, 1198 (11th Cir. 1993). Therefore, to the extent that this Court can even review this decision of the BOP,[3] the undersigned is of the opinion that a two-month adjustment period is not unreasonable for this particular petitioner.

## B. Gratuity Issue

Pursuant to 28 C.F.R. § 571.20, it is the policy of the BOP "that an inmate being released to the community will have suitable clothing, transportation to the inmate's release destination, and some funds to use until he or she begins to receive income. Based on the inmate's needs and financial resources, a discretionary gratuity up to the amount permitted by statute may be granted."

---

[3] This is clearly an issue that is uniquely within the expertise of the BOP and is due at least some deference.

Petitioner has been considered for a release gratuity. However, based on his financial resources the BOP has determined that petitioner should not be awarded such a gratuity. Instead, the BOP has continuously encouraged petitioner to save money in his inmate account to facilitate his transition. Contrary to his own beliefs, petitioner is not entitled to a release gratuity under § 571.20. Release gratuities are solely within the discretion of the BOP, and the BOP has exercised its discretion in this case. See Palmer v. Bureau of Prisons, 2006 WL 533511 (D.Or. March 2, 2006) (finding that pursuant to § 571.20 the BOP is not required to award "gate money" to departing inmates as gate money is merely a discretionary gratuity.)

Moreover, the purpose of a release gratuity is not to give a prisoner a windfall at the time of his release. Release gratuities should be reserved for those persons who truly have no financial resources and no support network and genuinely need assistance in making the transition back into society. As noted earlier in this opinion, that is simply not the case for petitioner.

Accordingly, because petitioner is not entitled to a release gratuity, and because the decision of the BOP denying petitioner such a gratuity is not unreasonable, the undersigned is of the opinion that petitioners' request for a $1000 release gratuity should be denied.

## IV. Recommendation

For all the reasons set forth in this opinion, the undersigned recommends that the petition, and petitioner's request for injunctive relief, be DENIED and this case be DISMISSED WITH PREJUDICE.[4]

---

[4] Although it is clear from the pleadings that the petitioner has not exhausted his administrative remedies with regard to this claim, I have not addressed that issue in this opinion because I believe that the petition has no merit. Therefore, I can see no purpose in dismissing this case without prejudice for the failure to exhaust only to allow petitioner to later re-file his meritless claims. Such would not be an

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner and counsel of record.

DATED: June 11, 2006.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

efficient use of the Court's resources.